UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIO CRUZADO,<br><br>Petitioner,<br><br>v.<br><br>SUPERINTENDENT,<br>MCI-NORFOLK,<br><br>Respondent. | )<br>)<br>)<br>)<br>)<br>)  Case No. 18-cv-12361-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                November 3, 2021

## I. Introduction

Petitioner Mario Cruzado ("Cruzado"), acting *pro se*, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). D. 1. The Superintendent of MCI-Norfolk ("Respondent") opposes the Petition. D. 14, 37. For the reasons discussed below, the Court DENIES the Petition.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts may review petitions for habeas that have resulted in either a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As an initial matter, a petitioner must show that he has exhausted all of his state court remedies or, in the alternative, that the State did not offer appropriate corrective measures. Id. To carry the burden of proving exhaustion, a petitioner must demonstrate that he has "fairly

1

and recognizably" presented his claim to the state's highest court, the Supreme Judicial Court in this case. Casella v. Clemons, 207 F.3d 18, 20 (1st Cir. 2000); Adelson v. DiPaola, 131 F.3d 259, 263 (1st Cir. 1997).

For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III.  Relevant Factual and Procedural Background

Unless otherwise noted, the factual background set forth below is drawn from the Supreme Judicial Court's decision affirming Cruzado's conviction. Commonwealth v. Cruzado, 480 Mass. 275 (2018).

#### A.  The Commission of the Crime

The charges against Cruzado arose out of events leading up to and culminating on November 26, 2010. Id. at 276. On November 24, 2010, the victim's boyfriend, Jamie Hernandez ("Hernandez"), unexpectantly encountered Cruzado, a former acquaintance of Hernandez. Id. Hernandez brought Cruzado to the victim's apartment in Chelsea, Massachusetts where the three drank together. Id. Later that morning, Hernandez brought Cruzado to a bus stop and then returned to the victim's apartment where Hernandez and the victim argued over the whereabouts of the victim's cell phone. Id. Hernandez left the apartment and did not return. Id. Two days later, the victim's body was found in the apartment. Id. The cause of death was strangulation and blunt force trauma to the head. Id.

**B.     Police Investigation and Charge**

Eleven days later, Hernandez reported to police that Cruzado had made incriminating statements about the victim's death on two separate occasions.  Id.  Hernandez reported that on the first occasion, when he refused to give Cruzado a cigarette, Cruzado threatened to choke Hernandez as he had choked the victim.  Id.  Hernandez furthered that on the second occasion, he overheard Cruzado speaking on a cell phone using the word "belt" and "mentioned . . . ha[ving] his arm around somebody's neck."  Id.

Hernandez also directed investigators to a nearby apartment building where Cruzado was found asleep on a landing near a cell phone.  Id. at 281.  Investigators later questioned Cruzado about the cell phone at the police station.  Id.  Cruzado claimed that he had been given the cell phone to use the day before, but he did not know the owner's name or the telephone number.  Id.  Cruzado claimed the cell phone was not his and that the "dude" left it.  Id.  When the police asked whether Cruzado was supposed to return the cell phone to its owner Cruzado responded, "No."  Id.  In a recorded interview with police, officers asked Cruzado whether he knew the victim by either of his nicknames, to which Cruzado responded, "No."  Id. at 277.  The police then showed Cruzado a photograph of the victim, giving rise to the following exchange:

> Q.: "I'm going to show you a picture of a guy. See if you've ever seen this guy before."
>
> A.: "Who's that?"
>
> Q.: "I'm asking you. Isn't this – I'm asking you. Have you ever seen this guy before? Yes or no?"
>
> A.: "Who the fuck is that? Just a guy?"
>
> Q.: "No, listen to me. Listen to me. Have you ever seen this guy before? Yes or

no?"

A.: "He looks like a nigger to me."

Q.: "Have you ever seen this guy before?"

A.: "He looks like a nigger to me."

Q.: "Have you ever seen this guy right here before?"

A.: "He looks like a nigger to me. No. He's black."

Q.: "No. It's a yes or no question."

A.: "He's black."

...

Q.: "Yes or no?"

A.: "Where the fuck I've ever seen him? I don't know that mother fucker."

Id.

Ten days after the police questioned Cruzado about the cell phone, police obtained a warrant to search the cell phone. Id. at 281. Information found on the cell phone led police to contact Cruzado's former girlfriend, Hilda Matiaz ("Matiaz"). Id.

Matiaz told investigators that Cruzado had called her, id. at 276, and told her that he visited an African American man's apartment in Chelsea, Massachusetts, id.. Cruzado recounted falling asleep after taking a shower at the apartment and awaking to the man touching Cruzado's testicles. Id. Cruzado said he then fought the man, told him he was "not a fag[g]ot," and put him in a headlock. Id. He said the man then fell to the floor, after which Cruzado put on his clothes and left the apartment. Id. On June 24, 2011, Cruzado was indicted and charged with murder in

4

violation of Mass. Gen. L. c. 265 § 1 and receiving stolen property in violation of Mass. Gen. L. c. 250 § 60.[1]  D. 36 at 1.

### C. Relevant State Court Proceedings

Cruzado's trial began on December 11, 2012.  D. 36 at 1.  On December 18, 2012, the jury returned a guilty verdict of first-degree murder.  Id. at 2.  The trial court sentenced Cruzado to a term of life imprisonment.  Id.

In his timely appeal to the Supreme Judicial Court, Cruzado raised five claims:  (1) the trial court erroneously admitted certain portions of the recorded interview between Cruzado and police; (2) the trial court erroneously allowed Hernandez to testify about the argument he had with the victim; (3) Cruzado's trial counsel should have been allowed to question Matiaz about whether she was a drug dealer; (4) Cruzado's counsel was ineffective for failing to move to suppress information derived from the cell phone seized by police; and (5) the Commonwealth did not present physical evidence of the defendant's guilt.  Cruzado, 480 Mass. at 277.  The Supreme Judicial Court addressed each of these claims and affirmed the petitioner's first-degree murder conviction on August 10, 2018.  Id. at 285; D. 37 at 8.

### D. This Petition

In the Petition, Crichlow asserts the following grounds for habeas relief:  (1) that Cruzado's right to due process was violated when the trial court allowed, over Cruzado's objection, admission of portions of a recorded police interview in which Cruzado uses the N-word in reference to the victim (Ground One); and (2) Cruzado's trial counsel was ineffective for failing to file a motion

---

[1] The receipt of stolen property charge was dismissed on the Commonwealth's motion on December 19, 2012.  D. 36 at 2.

to suppress regarding the search and seizure of the cell phone (Ground Two).  D. 1 at 6, 8; D. 36 at 1.

IV.     **Discussion**

    A.     **Admission of the Racial Epithet (Ground I)**

Cruzado contends that the Supreme Judicial Court's decision affirming the state court's admission of his recorded police interview, in which he used the N-word is contrary to clearly established federal law.  D. 36 at 10-11.

Cruzado argues that the admission of his use of the racial epithet at trial solely demonstrated bad character, which violated his due process rights.  D. 36 at 12.  He contends that the Supreme Judicial Court violated clearly established federal law by affirming the decision.  Id. at 11.  Evidentiary rulings that are so fundamentally unfair that they violate due process may serve as grounds for federal habeas corpus relief.  Coningford v. Rhode Island, 640 F.3d 478, 484 (1st Cir. 2011).  Habeas relief will only be triggered, however, if the state court's application of state law was "'so arbitrary or capricious as to constitute an independent due process . . . violation.'"  Id. (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)).  "[T]he category of infractions that violate 'fundamental fairness' [is defined] very narrowly."  Dowling v. U.S., 493 U.S. 342, 352 (1990).  Such application must violate fundamental conceptions of justice, going against "'the community's sense of fair play and decency.'"  Id. (quoting Rochin v. California, 342 U.S. 165, 173 (1952).

The Supreme Judicial Court reasonably determined that Cruzado did not meet this due process standard.  Although evidence showing bad character is generally inadmissible, United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996), such evidence may be admissible if it has a special probative value, id. (citing United States v. Aguilar-Montoya, 967 F.2d 708, 709 (1st Cir.

1992)); see Dickerson v. United States, 530 U.S. 428, 433-34 (2000).  Moreover, Cruzado does not claim that any of the statements he made, including the use of the racial epithet, were made involuntarily or obtained in a manner incompatible with the requirements of the Constitution.  See United States v. Monroe, 264 F. Supp. 3d 376, 380, 387-88 (D.R.I. 2017).

The Supreme Judicial Court's determination that Cruzado's statements held a special probative value was reasonable.  D. 1-2 at 8.  "[E]vidence of a defendant's prior bad acts may not be admitted to prove his criminal character or propensity to commit crimes."  United States v. Varoudakis, 233 F.3d 113, 118 (1st Cir. 2000).  "If the evidence brings unwanted baggage, say, unfair prejudice or a cognizable risk of confusing the jury . . . the evidence must be excluded," United States v. Anguilar-Aranceta, 58 F.3d 796, 800 (1st Cir. 1995) (internal quotation marks and citations omitted), although only if the "baggage's weight" substantially outweighs any probative value.  Id.  When the evidence, however, is especially probative of an issue in the case, such as intent or motive, it generally overcomes the prejudice bar and may be admitted.  See Frankhauser, 80 F.3d at 648.

Here, the racially charged language held substantial probative value in demonstrating whether the crime may have been partially racially motivated.  Cruzado, 480 Mass. at 279.  It was properly within the discretion of the trial court to allow this testimony when the Commonwealth's theory of the case was that Cruzado could have been "enraged" not just that he was touched sexually by the victim, a man, but an African-American man.  Id.  Moreover, "to mitigate the prejudicial effect of the racial slur," the trial court conducted individual voir dire of the potential jurors to front the likely admission of this evidence and address any potential bias.  Id. & n.1.  Moreover, Cruzado did not seek any limiting instruction regarding this evidence and a failure to

give one *sua sponte*, id. at 279, does not satisfy Cruzado's burden here. Accordingly, habeas relief for Ground I is not warranted here.

Cruzado additionally argues that when he used the racial epithet during the police interview, he denied knowing the victim, and therefore those portions of the recorded interview are inadmissible in court. D. 36 at 10. Under Massachusetts law, when a defendant is "'charged with a crime by an accusation made in his presence" and makes an equivocal reply "'susceptible of being interpreted as an admission . . . the question or statement and the answer or comment are admissible.'" Commonwealth v. Rogers, 8 Mass. App. Ct. 469, 473-74 (quoting Commonwealth v. McGrath, 351 Mass. 534, 538 (1967)). The accusatory statement will be admitted "to give meaning and effect" to the defendant's answer which is "admitted as an admission." Rogers, 8 Mass. App. Ct. at 474. A defendant's unequivocal denial of an accusation, however, is inadmissible. Id. at 475 (finding error where the court admitted a recording of police accusing the defendant of possessing a gun which the defendant unequivocally denied); see Commonwealth v. Spencer, 465 Mass. 32, 46-47, 51 (2013) (holding that the defendant's unequivocal denials of police questions that accused the defendant of lying or asked him to explain the reason why others thought he committed a crime were inadmissible).

Regarding Cruzado's interview, at no point during the interview in which Cruzado used the racial epithet did investigators accuse Cruzado of a crime or of engaging in any criminal activity. While it is true that "unequivocal denial[s] of an accusation . . .and the accusation it denies, are inadmissible" id. at 46, this rule applies to accusations of guilt. The investigators asked Cruzado whether he saw the victim before, to which Cruzado responded, "Who's that?" Cruzado, 480 Mass. at 277. Investigators continued to ask Cruzado whether he ever saw the victim before, until Cruzado responded, "He looks like a [N-word] to me. No. He's black." Id. The questions

posed by police were not accusations, therefore Cruzado responses could not be considered denials that would have been inadmissible under Massachusetts law. State-law claims, however, are not a basis for federal habeas relief. Waddington v. Sarausad, 555 U.S. 179, 192 n.5 (2009). This ground also fails because it is not contrary to clearly established federal law as discussed above.

For all these reasons, the Petition on Ground I fails.

### B.  Ineffective Assistance of Counsel (Ground II)

Cruzado's second ground for habeas corpus relief is that his trial counsel was ineffective for failing to file a motion to suppress the seizure and search of the cell phone. D. 36 at 13; D. 1-2 at 12. To establish ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), Cruzado must show: "(1) deficient performance by counsel (2) resulting in prejudice." Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009) (quoting Malone v. Clarke, 536 F.3d 54, 63 (1st Cir. 2008)). To demonstrate deficient performance, Cruzado must illustrate that the counsel's performance "fell below an objective standard of reasonableness under the circumstances." Ficco, 556 F.3d at 70 (quoting Sleeper v. Spencer, 510 F.3d 32, 38 (1st Cir. 2007)). To demonstrate prejudice, Cruzado must show, "that, but for the counsel's unprofessional error, there is reasonable probability that the result of the proceeding would have been different." Ficco, 556 F.3d at 70 (quoting Sleeper, 510 F.3d at 39).

The legal standards created by Strickland and § 2254 are both highly deferential, . . . when the two apply in tandem, review is doubly so."[2] Harrington v. Ritcher, 562 U.S. at 105 (citations and quotation marks omitted). "The Strickland standard [itself] is a general one, so the range of reasonable applications is substantial." Id. When habeas applies, the question is not whether

---

[2] Massachusetts's ineffective assistance of counsel standard does not employ "identical phraseology" as the Strickland standard, but the two are "functional[ly] equivalent" for habeas purposes. See Ouber v. Guarino, 293 F.3d 19, 32 (1st Cir. 2002).

9

counsel's actions were reasonable, but rather whether there is "any reasonable argument that counsel satisfied Strickland's deferential standard." Id. In other words, the pivotal question here is whether the Supreme Judicial Court's application was reasonable. See Mello v. DiPaulo, 295 F.3d 137, 143 (1st Cir. 2002); Harrington, 562 U.S. at 105.

Regarding the first Strickland requirement, deficiency will only be found where "counsel's choice was so patently unreasonable that no competent attorney would have made it." Williams v. United States, 858 F.3d 708, 715 (1st Cir. 2017) (internal quotation marks omitted) (quoting Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006)). Regarding the prejudice requirement, relief will only be granted if Cruzado has demonstrated that there is a reasonable probability that the result of the proceeding would have been different if not for counsel's error. Strickland, 466 U.S. at 694. Even if counsel made a professionally unreasonable error, however, the judgment of a criminal proceeding will not be set aside if that error has no effect on the judgment. Id.

Here Cruzado contends that his trial counsel was ineffective in failing to move to suppress the search and seizure of the cell phone police found located near Cruzado. D. 36 at 13. Cruzado argues that if his trial counsel had filed a motion to suppress on these grounds, the motion would have been successful. Id. As to this claim, the Supreme Judicial Court concluded that the motion to suppress would have been unsuccessful because police had probable cause to seize and search the cell phone (including that the Cruzado and the victim had been together on the day of the murder and that Hernandez had recently overhead Cruzado make inculpatory statements to an unidentified person on a cell phone), but also because there were "exigent circumstances" for the warrantless seizure including "the risk of someone taking or tampering with the cell phone" and that if "[l]eft unattended, especially in an area to which many people had access [i.e., stairwell of an apartment building], the cell phone would have been at risk of 'theft or vandalism.'" Cruzado,

480 Mass at 282-83. It cannot be said that Cruzado's attorney was ineffective for failing to bring a futile motion. Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999); DeLong v. Brady, 723 F. Supp. 2d 376, 393 (D. Mass. 2010).

For similar reasons, Cruzado has failed to satisfy the prejudice prong of the Strickland test. For this prong, a petitioner must show "that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Turner v. United States, 699 F.3d 578, 584 (1st Cir. 2012) and cases cited. Given the reasons that a motion to suppress, if one had been filed by counsel, would have futile given the facts and circumstances here, this Court also concludes that Cruzado has failed to show that "but for" for counsel's failure to file such motion, the outcome of his trial would have been different. Smith, 528 U.S. at 285-86. Accordingly, the Petition fails on Ground II as well.

### V.       Conclusion and Certificate of Appealability

For the foregoing reasons, the Court DENIES the Petition, D.1. Cruzado may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong." Miller–El, 537 U.S. at 338 (internal quotations omitted). Based upon the analysis of the record and the applicable law in this Memorandum and Order, the Court does not, at this juncture, conclude that reasonable jurists would find its conclusion debatable or wrong. The Court, therefore, is not inclined to issue a certificate of appealability, but will give Cruzado until December 3, 2021 to file a memorandum, if he seeks to address the issue of whether a certificate of appealability is warranted as to either or both grounds in the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge
